**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| EMMANUEL CARTAGENA-CORDERO, *Plaintiff*, <br><br> v. <br><br> R&L CARRIERS SHARED SERVICES, LLC, *Defendant*. | No. 3:24-cv-218 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

Emmanuel Cartagena-Cordero, ("Mr. Cartagena-Cordero" or "Plaintiff") has sued R&L Carriers Shared Services, LLC ("R&L" or "Defendant") for violations of the Connecticut Fair Employment Practices Act ("CFEPA") §§ 46a–60(b)(1), 46–60(b)(4),[1] and 46a–58 ("Count One"), Title VII of the Civil Rights Act of 1964 ("Count Two"), and the Family and Medical Leave Act ("FMLA") § 29 C.F.R. 825.100 for retaliation ("Count Three"), as well as a common law hostile work environment claim ("Count Four"). Notice of Removal, ECF No. 2-1 (Feb. 20, 2024) ("Compl.")

Defendants have filed a motion dismiss the Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). Mot. to Dismiss, ECF No. 15 (Mar. 27, 2024).

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED** as to Plaintiff's Section 46a–58 and common law hostile work environment claims, and any FMLA interference claim, to the extent that one is asserted, but **DENIED** as to Plaintiff's remaining claims for

---

[1] Plaintiff's state court Complaint alleges to bring claims under Sections "46a–60(a)(1), 46–60(a)(4)." Compl. at 1. As Defendant notes, and Plaintiff does not dispute, however, "[t]he CFEPA was amended in 2017, and these claims are now properly advanced as claims pursuant to Conn. Gen. State §§ 46a-60(b)(1) and 46a-60(b)(4)." Mot. to Dismiss at 2 n.2; *see also* Mem. in Support of Opp'n to Mot. to Dismiss, ECF No. 21-1 at 6 (May 17, 2024) (Plaintiff "alleges that he was fired in violation of Connecticut General Statutes §46a-60(b)(1)[.]")

retaliation and discrimination under the CFEPA, and his Title VII hostile work environment and FMLA retaliation claims.

The Section 46a–58, and common law hostile work environment claims are dismissed with prejudice.


## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

On January 23, 2017, Mr. Cartagena-Cordero allegedly began working for R&L as a truck driver. Compl. ¶ 3.

Mr. Cartagena-Cordero alleges that during his employment, his coworkers "would call him 'Mexican' and suggested 'he go back to where he came from.'" *Id.* ¶ 4. He further alleges that some coworkers "used the 'N' word towards him" and that "[h]e was told if he did not like it he could quit." *Id.* He further alleges that "[h]e constantly had ethnic and racial epithets directed towards him." *Id.* ¶ 7.

Mr. Cartagena-Cordero alleges that he "repeatedly" reported this harassment to R&L, but R&L allegedly did not adequately investigate the incidents of harassment. *Id.* ¶ 5.

Mr. Cartagena-Cordero also alleges that during his employment, "he had a gun pulled on him by another employee; had human excrement put on his [truck's] door handle and had a supervisor call him a 'worthless dad.'" *Id.* ¶ 7.

On or around June 6, 2022, Mr. Cartagena-Cordero allegedly was hospitalized for chest pain and was diagnosed with work-related stress. *Id.* ¶ 6.

He allegedly went on leave due to his work-related stress until October 17, 2022, and provided R&L with a medical note.[2] *Id.* ¶ 8.

On October 17, 2022, when Mr. Cartagena-Cordero allegedly attempted to return to work, R&L allegedly "terminated him without any explanation."  *Id.* ¶ 10.

Mr. Cartagena-Cordero alleges that he suffered damages in the form of lost wages and benefits, and suffered "emotional distress, mental upset and embarrassment." *Id.* ¶ 11–12.

### B.  Procedural History

On December 29, 2022, Mr. Cartagena-Cordero filed a Complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC"). Exhibit A to Mot. to Dismiss, ECF No. 15-2 (Mar. 27, 2024) ("First CHRO Complaint").

On July 12, 2023, Mr. Cartagena-Cordero filed an Amended Complaint with the CHRO and the EEOC. Exhibit C to Mot. to Dismiss, ECF No. 15-4 (Mar. 27, 2024) ("Amended CHRO Complaint").

In November 2023,[3] the CHRO issued a release of jurisdiction.

On January 24, 2024, Mr. Cartagena-Cordero filed his Complaint in Connecticut Superior Court, Judicial District of Hartford. Compl.

On February 20, 2024, R&L removed the case to federal court. Not. of Removal, ECF No. 2 (Feb. 20, 2024).

---

[2] Mr. Cartagena-Cordero submitted his FMLA leave request as an exhibit to his Opposition, which indicated that he requested leave on April 27, 2022, and began his leave on May 6, 2022, with an expected return to work date of July 29, 2022. Exhibit 3 to Plaintiff's Opp'n, ECF No. 21-4 at 2, 4 (May 17, 2024).
[3] Mr. Cartagena-Cordero claims that the release of jurisdiction was issued on November 23, 2023, Opp'n at 3, whereas R&L contends that the release of jurisdiction was issued on November 3, 2023. Mot. to Dismiss at 5.

On March 27, 2024, R&L filed its motion to dismiss the Complaint. Mot. to Dismiss, ECF No. 15 (Mar. 27, 2024); Mem. in Support of Mot. to Dismiss, ECF No. 15-1 (Mar. 27, 2024) ("Mot. to Dismiss").

On May 17, 2024, Mr. Cartagena-Cordero filed a memorandum of law in opposition to R&L's motion to dismiss. Mem. in Support of Opp'n to Mot. to Dismiss, ECF No. 21-1 (May 17, 2024) ("Opp'n").

On May 31, 2024, R&L filed a reply in support of their motion to dismiss. Reply in Supp. of Mot. to Dismiss, ECF No. 22 (May 31, 2024) ("Reply").

On November 13, 2024, the Court held a motion hearing on the motion to dismiss. Minute Entry, ECF No. 35.

## II.    STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a

complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).


## III.    DISCUSSION

R&L seeks to dismiss Mr. Cartagena-Cordero's CFEPA claims in Count One because it claims the statute does not provide a private cause of action under Section 46a–58, he did not

exhaust his administrative remedies for his retaliation claim, and he fails to plead a discrimination or retaliation claim. R&L also seeks to dismiss Count Two as time-barred because it claims Mr. Cartagena-Cordero fails to allege facts supporting a Title VII hostile work environment claim. Finally, R&L claims that Count Three must be dismissed because Mr. Cartagena-Cordero fails to plead sufficient factual allegations for his FMLA claims, and Count Four likewise must be dismissed because there is no common law claim for hostile work environment in Connecticut.

The Court will address each argument in turn, addressing his federal claims first.

### A. The Title VII Claim

#### 1. Timeliness

Under § 2000e-5(e)(1) of Title VII, where a plaintiff first brings a claim to a state administrative agency, a complaint must be filed with the EEOC "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) ("In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days. A claim is time barred if it is not filed within these time limits."). A discrete retaliatory or discriminatory act "occurred" on the day that it "happened." *Morgan*, 536 U.S. at 109.

Discrete acts may include "termination, failure to promote, denial of transfer, or refusal to hire." *Id*. at 114. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id*. at 113. In contrast, "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Id*.

at 115. "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id*. at 117.

R&L argues that because Mr. Cartagena-Cordero started his leave of absence on June 6, 2022, and did not return to work thereafter, he could not have suffered an act of harassment after that date, and his Amended Complaint, filed over a year later on July 12, 2023, was untimely. Mot. to Dismiss at 13. R&L further argues that Mr. Cartagena-Cordero's first CHRO Complaint, filed on December 29, 2022, does not toll the statute of limitations because it named the wrong defendant, "R&L Carriers Inc." instead of "R&L Carriers Shared Services, LLC." *Id.*

In response, Mr. Cartagena-Cordero alleges that the original Complaint, although it listed the wrong entity, was served on R&L and thus R&L had notice of the Complaint within the appropriate time period. Opp'n at 2–3.

In its reply, R&L asserts that the failure to name the correct entity is not excused by the fact that R&L's counsel received notice of the Complaint, and the Amended CHRO Complaint is the operative pleading for tolling purposes. R&L further alleges that the leave of absence on June 6, 2022 occurred "well before" the 300-day period prior to the Complaint, ending on September 15, 2022, and thus no discrete acts occurred within the appropriate tolling period. Reply at 4.

The Court disagrees.

As an initial matter, Mr. Cartagena-Cordero alleges that he was terminated on October 17, 2022, well within the 300-day period of the Amended CHRO Complaint. Courts have routinely held that a termination can be considered an adverse employment action starting the tolling period for a Title VII claim. *Morgan*, 536 U.S. at 114 ("Discrete acts such as termination, . . . are easy to identify,"); *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76 (2d Cir. 2010)

("Accordingly, unless a discriminatory act contributing to her hostile work environment claim fell within the seven-day window—between the start of the limitations period on September 6, 2000 and the termination of her employment on September 12, 2000—her claim is time-barred."); *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) ("Examples of materially adverse changes include termination of employment" (citation omitted)). As a result, even if the statutory period were to be tolled from the date of the Amended CHRO Complaint, Mr. Cartagena-Cordero may bring claims based on this discrete act.

In addition, while "[g]enerally, an action under Title VII can proceed only against those individuals named as respondents in the complaint filed with the EEOC . . . [a] limited exception to the exhaustion requirement permits an action against a party not named as a respondent in the EEOC complaint if the underlying dual purposes of the exhaustion requirement are otherwise satisfied." *Maturo v. Nat'l Graphics, Inc.*, 722 F. Supp. 916, 924 (D. Conn. 1989) (citing 42 U.S.C. § 2000e–5(f)(1) *and then Alcena v. Raine*, 692 F. Supp. 261, 269 (S.D.N.Y.1988)); *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991) ("[T]he "identity of interest" exception, permits a Title VII action to proceed against an unnamed party where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge."). This exception recognizes that "[t]he primary purposes of requiring exhaustion in an EEOC context are to give notice to the employer of the alleged discriminatory actions, and to facilitate voluntary compliance should the EEOC find cause for the complaint." *Garcia v. Gardner's Nurseries, Inc.*, 585 F. Supp. 369, 373 (D. Conn. 1984).

Under this exception, termed the "identity of interest" exception, "[a]s long as the factual allegations of the administrative complaint already filed (1) have provided notice to the employer of the incidents alleged by the non-exhausting employees, and (2) have triggered an inquiry by

8

the EEOC comprehensive enough to include the incidents alleged by the non-exhausting employees, so as to unearth all the relevant facts and enhance the possibility of voluntary settlement, there is no need to require the non-exhausting plaintiffs to exhaust." *Id.*

Mr. Cartagena-Cordero filed his first CHRO Complaint on December 29, 2022, against "R & L Carriers" located at "540 Sullivan Ave, South Windsor, CT 06074." First CHRO Complaint at 2. He subsequently amended his Complaint to name "R&L Carriers Shared Services, LLC" with a Connecticut address at "90 N. Plains Industrial Road in Wallingford, Connecticut, 06492." Amended CHRO Complaint at 2. R&L does not dispute that Mr. Cartagena-Cordero's counsel did not enter an appearance with the CHRO until he filed the amended Complaint on July 12, 2023, although it claims that "throughout the CHRO's process he was consulting with an attorney."[4] Reply at 5 n.2. In addition, the Amended Complaint did not include additional factual allegations and merely corrected the Respondent's legal name.[5] Amended CHRO Complaint at 2.

This is precisely the situation that the "identity of interest" exception contemplates. *See Maturo*, 722 F. Supp. at 925 (where defendants "had actual notice of the complaint," and "plaintiff was not represented by an attorney at the time she submitted the CHRO complaint, but also that she was assisted in its drafting by CHRO personnel," concluding "the underlying

---

[4] During the motion hearing, counsel for Mr. Cartagena-Cordero stated that he had not been consulted on Mr. Cartagena-Cordero's initial CHRO complaint.

[5] The Amended CHRO Complaint contains two paragraphs with its allegations:

    1. That complainant adopts each and every allegation contained in the original complaint and all amendments unless specifically altered by expressed provisions to the contrary; and/or

    2. Complainant amends the original complaint and amendments to state the Respondent as R&L Carriers Shared Services, LLC with business address of 90 N. Plains Industrial Road in Wallingford, Connecticut, 06492, and mailing address of 600 Gillam Road in Wilmington, Ohio, 45177.

Amended CHRO Complaint at 2.

purposes of providing notice and encouraging conciliation were satisfied and that plaintiff should not be barred from proceeding because of a technical failure in the filing of her CHRO and EEOC complaints.").

Here, R&L had notice of Mr. Cartagena-Cordero's claims, and was simply mistaken as to the correct corporate entity name—"Inc." or "Shared Services, LLC"—under which R&L operated. This error is considerably more minor than instances where courts have found the "identity of interest" exception to apply. *See Garcia*, 585 F. Supp. at 373 (applying exception to find that plaintiff who brought administrative Complaint only on his own behalf did not fail to exhaust complaint against similarly situated coworkers); *Peterson v. City of Hartford*, 80 F. Supp. 2d 21, 24 (D. Conn. 1999) (applying exception where plaintiff failed to name certain individual defendants); *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 905–06 (7th Cir. 1981), *cert. denied*, 455 U.S. 1017 (1982) (exception applied to entity not named as defendant where EEOC charge mentioned officers of entity because "given [Title VII's] remedial purpose, charges are to be construed with utmost liberality and parties sufficiently named or alluded to in the factual statement are to be joined.") (footnote and internal quotation marks omitted); *see also Georgiu v. Sterling Mounting & Finishing*, 1 Fed. App'x 47, 49 (2d Cir. 2001) (summary order) (vacating and remanding decision where district court failed to consider if exception applied to a president of a company where the EEOC charge named the company but not the president) (citing to, *inter alia*, *Johnson*, 931 F.2d. 203).

Moreover, as there is no indication that Mr. Cartagena-Cordero was represented when he filed his initial Complaint, "the underlying purposes of providing notice and encouraging conciliation were satisfied and . . . plaintiff should not be barred from proceeding because of a technical failure in the filing of [his] CHRO and EEOC complaints." *Maturo*, 722 F. Supp. at

924; *see also Peterson*, 80 F. Supp. 2d at 24 (finding that because "[t]here is nothing in the charges themselves indicating that plaintiffs had counsel at the time the charges were filed [, i]n ruling on this motion to dismiss, we must assume that they were not represented" and noting "[t]he 'identity of interests' exception has been held to apply only when plaintiffs were not represented by counsel at the time they filed their administrative discrimination charges." (citations omitted)); *Egelston v. State Univ. Coll. at Geneseo*, 535 F.2d 752, 754–55 (2d Cir. 1976) ("Title VII is rife with procedural requirements which are sufficiently labyrinthine to baffle the most experienced lawyer, yet its enforcement mechanisms are usually triggered by laymen. Were we to interpret the statute's procedural prerequisites stringently, the ultimate result would be to shield illegal discrimination from the reach of the Act. Prior decisions, both of the Supreme Court and of this Circuit have, for this reason, taken a flexible stance in interpreting Title VII's procedural provisions.") (collecting cases).

R&L's arguments to the contrary are unavailing. In *Perez v. Connecticut Department of Correction Parole Division*, this Court "grant[ed] [a] motion to dismiss Title VII claim against [the] defendant based, in part, on plaintiff's untimely amended CHRO complaint, which added [the] defendant as a respondent to an earlier filed charge, where the purported adverse employment action related to the defendant pre-dated the amended complaint by 300-days." Mot. to dismiss at 13 (citing *Perez v. Connecticut Dep't of Correction Parole Div*., 3:13-CV-150 JCH, 2013 WL 4760955, at *5 (D. Conn. Sept. 4, 2013)). But, "[e]ven had Perez included her charge against DAS in [the initial CHRO complaint], the charge would have been untimely, based as it was on events that occurred almost two years earlier, well outside the statutory 300–day limit." *Perez*, 2013 WL 4760955, at *5. The basis for the finding of untimeliness was because the "event postdate[d] her original CHRO complaint, but preceded her amendment to the complaint

on September 4, 2012 by more than 300 days." *Id.* This is distinct from this case, where the initial CHRO complaint was timely filed and gave the Defendant adequate notice of the claims asserted against it, but misstated the Defendant's corporate name.

Accordingly, because it is possible that the alleged incidents occurred 300 days before he filed his initial Complaint on December 29, 2022, Mr. Cartagena-Cordero's claims are not time-barred at this stage of the litigation.

### 2. Failure to State a Claim

"To establish a hostile work environment claim under the Title VII framework, a plaintiff must show that the 'workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "To state a claim for a hostile work environment under Title VII . . ., a plaintiff must show that the complained-of conduct: (1) is objectively severe or pervasive; (2) creates an environment that the plaintiff herself subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's race." *Goins v. Bridgeport Hosp.*, 555 F. App'x 70, 71–72 (2d Cir. 2014) (summary order). When evaluating a hostile work environment on a motion to dismiss, "a simple declaration that defendant's conduct violated the ultimate legal standard at issue (e.g., it was "because of sex" or "severe or pervasive") does not suffice. But it is enough to assert facts from which, construing the complaint liberally and in the plaintiff's favor, one could infer such a violation." *Gregory*, 243 F.3d at 692 (2d Cir. 2001), *as amended* (Apr. 20, 2001). "In determining whether a plaintiff suffered a hostile work environment, [courts] must consider the totality of the circumstances." *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015).

"Moreover, to hold an employer liable for such a hostile work environment, federal law requires the plaintiff to show 'a specific basis for imputing the conduct creating the hostile work environment to the employer.'" *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 90 (2d Cir. 2019) (quoting *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013)). There are two bases to impute liability on an employer: (1) "strict vicarious liability if an employer's supervisor has created the hostile environment" (2) "and negligence if a co-worker who is not a supervisor has created the hostile environment, and the employer, upon becoming aware of the misconduct, fails to remedy it." *Bentley*, 935 F.3d at 90 (citing *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015) and *Summa*, 708 F.3d at 113). "When harassment is perpetrated by the plaintiff's coworkers, an employer will be liable if the plaintiff demonstrates that 'the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.'" *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997) (quoting *Karibian v. Columbia University*, 14 F.3d 773, 780 (2d Cir.), *cert. denied*, 512 U.S. 1213 (1994))

R&L alleges that Mr. Cartagena-Cordero fails to allege sufficiently severe or pervasive conduct for a hostile work environment claim. Mot. to Dismiss at 13–16.[6]

Mr. Cartagena-Cordero alleges that the continuous verbal abuse he suffered was severe and pervasive enough to support a hostile work environment claim. Opp'n at 9–10.

---

[6] In his Complaint, Mr. Cartagena-Cordero does not specify that his Title VII claims includes a hostile work environment claim, and merely states, "The Defendant's conduct was in violation of Title VII of the Civil Rights Act of 1964, as amended in that the workplace harassment was on the basis of his ethnicity, specifically being of Hispanic background as he is from Puerto Rico." Compl. ¶ 13. Defendant asserts that Plaintiff's Title VII claim alleges a "hostile work environment." Mot. to Dismiss at 12. Because Plaintiff has brought a standalone "hostile work environment" claim, and any discrimination or retaliation claims under Title VII would be duplicative of those under the CFEPA, which the Court addresses below, the Court will consider whether Plaintiff properly pleads a hostile work environment claim under Title VII. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010) ("The analysis of discrimination and retaliation claims under CFEPA is the same as under Title VII.").

In reply, R&L claims that "Plaintiff cites to isolated comments made by co-workers over an unspecified period of time, most of which are unrelated to his national origin or ancestry" that are insufficient to support his claim. Reply at 6.

The Court disagrees, at least in part.

Mr. Cartagena-Cordero alleges that: his co-workers "would call him 'Mexican' and suggested 'he go back to where he came from,'" and "used the 'N' word towards him"; "he had a gun pulled on him by another employee; had human excrement put on his TRUCK'S [sic] door handle and had a supervisor call him a 'worthless dad.'"; and he "constantly had ethnic and racial epithets directed towards him." Compl. ¶ 4, 7.

While all of the alleged incidents may not have sufficiently linked as having been motivated by racial animus, such as a co-worker pulling a gun on him, leaving human waste on his door handle, and calling him a "worthless dad," *see Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) ("[I]t is 'axiomatic' that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex."); *see also Matthews v. Corning Inc.*, 77 F. Supp. 3d 275, 293 (W.D.N.Y. 2014) ("While actions that are neutral on their face can be considered in assessing the totality of the circumstances for a hostile work environment claim, there must be some circumstantial or other basis for inferring that [such] incidents were in fact discriminatory." (citation and internal quotation marks omitted)), some of these incidents sufficiently allege racial animus.

And, Mr. Cartagena-Cordero has met the "exceedingly low burden," *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 770 (2d Cir. 2015) (summary order), at the pleading stage. Indeed, Mr. Cartagena-Cordero does not allege occasional discriminatory remarks, *see Brown v. Coach Stores*, 163 F.3d 706, 713 (2d Cir. 1998) (granting motion to dismiss where Complaint

alleged that supervisor "made, on occasion, racist remarks and one such comment was directed at [the plaintiff]"). Rather, he alleges having "constantly had ethnic and racial epithets directed towards him," and provides examples of such epithets in his Complaint. Compl. ¶ 7. Moreover, he allegedly notified R&L of these incidents, but R&L did not take action to remedy it. Compl. ¶ 5 ("Cartagena repeatedly informed R&L Carrier's that he was being harassed and the nature of the harassment. Nothing came of his initial complaint or subsequent complaints, and to Plaintiff's knowledge there was no adequate investigation of his reports of discrimination at any time."); *see also Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir. 1987) ("Once an employer knows that a discriminatory environment exists, it has a statutory obligation to remedy it.").

Accordingly, the motion to dismiss Mr. Cartagena-Cordero's hostile work environment claim for failure to state a claim will be denied. *See, e.g., Johnson v. Connecticut Dep't of Admin. Servs. Bureau of Enter. Sys. & Tech.*, No. 3:17-CV-00901 (JAM), 2018 WL 306697, at *8 (D. Conn. Jan. 5, 2018) ("Whether these allegations are true, whether the adverse acts were sufficiently pervasive and prejudicial, or whether any adverse acts were for reasons other than plaintiff's race cannot be considered by me at this initial pleading stage.")

### B.  The FMLA Retaliation Claim

"The Family and Medical Leave Act provides broad protections to employees who need to take time away from work to deal with serious health conditions of the employee or her family." *Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 165–66 (2d Cir. 2017) (citation omitted). To enforce these protections, the FMLA "creates a private right of action to seek both equitable relief and money damages against any employer (including a public agency) in any Federal or State court of competent jurisdiction should that employer interfere

with, restrain, or deny the exercise of FMLA rights." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 174 (2d Cir. 2006) (internal quotation marks omitted).

Courts analyze discriminatory treatment claims, including FMLA retaliation claims, under the three-step burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004). The plaintiff must first make out a prima facie case. *Id.* If the plaintiff does so, the defendant must demonstrate "a legitimate non-discriminatory reason for the employment action at issue." *Id.* (quoting *Bir v. Pfizer, Inc.*, 510 F. Appx. 29, 30 (2d Cir.2013)). If the defendant meets this burden, the plaintiff then bears the burden of showing "that the defendant's proffered explanation is pretextual." *Id.*

At the pleading stage, the plaintiff's burden is even lower. The Second Circuit has held that "a plaintiff is not required to plead a prima facie case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). "Rather, because 'a temporary presumption of discriminatory motivation' is created under the first prong of the *McDonnell Douglas* analysis, a plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation.'" *Id.* (quoting *Littlejohn*, 795 F.3d at 311).

"To establish a prima facia case of FMLA retaliation, a plaintiff must establish that (1) 'he exercised rights protected under the FMLA,' (2) 'he was qualified for his position,' (3) 'he suffered an adverse employment action,' and (4) 'the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012) (quoting *Potenza*, 365 F.3d at 168 (2d Cir.2004)). The evidence required to demonstrate a prima facie case "has been characterized as

16

de minimis." *Wanamaker v. Town of Westport Bd. of Educ.*, 11 F. Supp. 3d 51, 72 (D. Conn. 2014) (internal citation omitted)).

R&L argues that Mr. Cartagena-Cordero's FMLA retaliation claim should be dismissed because he "does not allege he exercised rights under the FMLA," claims that his termination was due to his reporting discriminatory conduct, rather than FMLA leave, and "cannot rely on temporal proximity between his medical leave and alleged termination alone to establish an inference that his termination was retaliatory" because his twelve-week FMLA eligibility was set to expire on August 29, 2022. Mot. to Dismiss at 16–19.

Mr. Cartagena-Cordero asserts, however, that he established a prima facie case because he "was provided the leave itself from work but was immediately terminated upon his return." Opp'n. at 8. In his briefings, Mr. Cartagena-Cordero sets forth elements of an FMLA interference claim, rather than a retaliation claim, as asserted in the Complaint, and argues that he "has set forth a prima facie case at the pleading stage for FMLA interference." Mr. Cartagena-Cordero also attached his FMLA request form, which indicates that he requested leave on April 27, 2022, and asked to begin his leave on May 6, 2022 with an expected return to work date of July 29, 2022. Exhibit 3 to Plaintiff's Opp'n, ECF No. 21-4 at 2, 4 ("FMLA Form").

In reply, R&L asserts that Mr. Cartagena-Cordero does not address the arguments raised in the motion to dismiss regarding the alleged lack of temporal proximity, alternate explanation for his termination, "other evidence of animus towards his medical leave when his employment was supposedly terminated." Reply at 6–8.

The Court disagrees with Defendant, in part.

The dates of Mr. Cartagena-Cordero's leave in the Complaint—June 6, 2022, to October 17, 2022—clearly contradict those on the FMLA forms—May 6, 2022, to July 29, 2022.

Because Mr. Cartagena-Cordero's FMLA request form is "integral" to his Complaint, the Court may properly consider the dates set forth in the form in evaluating the motion to dismiss. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (Though "[t]he contract language . . ., as it exists in the actual customer agreement, differ[ed] from the language alleged in the complaint" the court considered the language of the contract, and held that "[w]here a plaintiff has 'reli[ed] on the terms and effect of a document in drafting the complaint,' and that document is thus 'integral to the complaint,' [a court] may consider its contents even if it is not formally incorporated by reference." (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)) (alteration in original)); *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) ("[I]n some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss").

Although Mr. Cartagena-Cordero does not plead that he requested "FMLA" leave, his Complaint does allege that he informed R&L that "he was going to take some time off due to work-related stress," and "provided a medical note" indicating he required several months of leave. Compl. ¶ 8. Moreover, as discussed above, the Court may properly consider the FMLA leave form that R&L provided him. Though the factual allegations in his Complaint are sparse, Mr. Cartagena-Cordero meets his minimal burden of showing that R&L had notice that Mr. Cartagena-Cordero had a serious medical need that required FMLA accommodation. *See Dighello v. Thurston Foods, Inc.*, 307 F. Supp. 3d 5, 17 (D. Conn. 2018) ("If an employee is (1) incapacitated for more than three days, (2) seen once by a doctor, and (3) prescribed a course of medication, such [as] an antibiotic, she has a serious health condition worthy of being covered by the FMLA." (citation omitted) (alteration in original)).

While Mr. Cartagena-Cordero does not allege retaliatory intent based on FMLA leave, at the pleading stage, he may establish circumstances supporting an inference of retaliatory intent based on the temporal proximity between his leave and his termination. *See Risco v. McHugh*, 868 F. Supp. 2d 75, 114 (S.D.N.Y. 2012) ("At the prima facie stage, a plaintiff can rely solely on temporal proximity to establish the requisite causal connection between her protected activity and the materially adverse action that she allegedly suffered in retaliation for engaging in that activity."); *Bowman v. CSX Transp., Inc.,* 22 F. Supp. 3d 181, 192 (N.D.N.Y. 2014) ("Temporal proximity can be sufficient to create an inference of retaliatory intent.") (collecting cases).

In the context of Title VII claims analyzed under the same framework, the Supreme Court has held that "the temporal proximity must be very close," and opined that while a one-and-a-half-month gap is sufficiently close, a three- or four-month gap is not. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (citing *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (one-and-a-half-month period may be sufficient); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three-month period insufficient); *and Hughes v. Derwinski*, 967 F.2d 1168, 1174–1175 (7th Cir. 1992) (four-month period insufficient)). The Second Circuit likewise "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001) (collecting cases).

Here, Mr. Cartagena-Cordero claims that he was not cleared for work until October 17, 2022, and did not contact R&L to return to work until that date, Compl. at ¶¶ 8–10, although his FMLA leave form clearly indicates that his leave ended July 29, 2022. FMLA Form at 4. Though Mr. Cartagena-Cordero alleges that he was terminated when he attempted to return to work on

October 17, 2022, it is unclear whether he intended to allege that he was discharged on the date his FMLA leave actually ended, July 29, 2022.

Even if he was discharged on October 17, 2022, less than three months after his FMLA leave ended on July 29, 2022, for now, Mr. Cartagena-Cordero has sufficiently alleged retaliatory inference. While this time period approaches the upper range, *see Richmond*, 120 F.3d at 209 (three-month period insufficient to support retaliatory inference), a period of two months may be sufficiently close to support a retaliatory inference. *Gorzynski*, 596 F.3d at 111 (where plaintiff "lodged her complaint within at most two months of her firing . . . she sufficiently alleged a causal connection between her protected complaint about sex discrimination and her termination"); *cf. O'Reilly v. Consol. Edison Co. of New York*, 173 F. App'x 20, 22 (2d Cir. 2006) (because plaintiff's employer provided a leave policy that was "more generous than that allowed by FMLA" by 32 weeks, "the three month gap between [Plaintiff's] FMLA leave and her termination is not sufficient to give rise to an inference of retaliation in light of the additional leave time [her employer's] policy allowed.").

As a result, even with the lack of clarity about the actual time periods of Mr. Cartagena-Cordero's leave, accepting all factual allegations not contradicted by his FMLA leave form as true, Mr. Cartagena-Cordero's FMLA retaliation claim will proceed to the next stage of this case.

To the extent Plaintiff seeks to allege an interference claim, however, this would be inapplicable here given that Mr. Cartagena-Cordero alleges that he was permitted to take leave due to his medical condition, and thus was not "prevented or otherwise impeded" from "exercis[ing] rights under the FMLA." *Woods*, 864 F.3d at 166 ("In a general sense, an employee brings an 'interference' claim when her employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA." (citing *Graziadio*, 817 F.3d at 424)).

Accordingly, to the extent that Mr. Cartagena-Cordero intended to assert a FMLA interference claim, the motion to dismiss will be granted, but the motion to dismiss Mr. Cartagena-Cordero's FMLA retaliation claim will be denied.

### C. The CFEPA Claims

In Count One, Mr. Cartagena-Cordero alleges claims under §§ 46a–58, 46–60(b)(4), and 46a–60(b)(1) of the CFEPA. R&L argues that Count One must be dismissed because (1) there is no private cause of action under Section 46a–58, (2) Mr. Cartagena-Cordero did not exhaust his administrative remedies for his retaliation claim, and (3) his Complaint fails to state a claim for discrimination or retaliation.

#### 1. The Section 46a–58 Claim

R&L argues that Plaintiff may not assert claims under Section 46a–58 because the statute is "penal in nature" and does not provide a private civil cause of action. Mot. to Dismiss 6–7.

Plaintiff does not dispute this assertion, nor can he, as "[c]ourts have consistently held that this statute does not give rise to a private cause of action." *Stockwell v. Santiago*, No. 3:16CV1476(VLB), 2016 WL 7197362, at *5 (D. Conn. Dec. 8, 2016) (collecting cases); *see also Garcia v. Saint Mary's Hosp.*, 46 F. Supp. 2d 140, 142 (D. Conn. 1999) ("The Second Cause of Action will be dismissed, because Connecticut General Statutes Section 46a–58 does not provide for a private cause of action under such statute. Section 43a–58 claims can only be prosecuted through the CHRO's administrative procedures."); *Page v. Connecticut Dep't of Pub. Safety, Div. of State Police*, 185 F. Supp. 2d 149, 160 n.6 (D. Conn. 2002) ("We also grant summary judgment on plaintiff's claim brought under section 46a–58 of the Connecticut General Statutes on the ground that there is no private cause of action under that statute.").

Accordingly, Plaintiff's Section 46a–58 claim must be dismissed.

## 2. Exhaustion of Administrative Remedies

"It is undisputed that CFEPA claims must initially go through the CHRO, and may not be sued upon until the CHRO grants a release of jurisdiction." *Fried v. LVI Servs., Inc.*, 557 F. App'x 61, 63 (2d Cir. 2014) (citing Conn. Gen. Stat. § 46a–82 and *Sullivan v. Bd. of Police Commissioners of City of Waterbury*, 491 A.2d 1096, 1100–02 (Conn. 1985). "Following Connecticut precedent, the courts of this District have concluded that, unlike in the Title VII context, exhaustion of administrative remedies is to be treated as a jurisdictional requirement for a plaintiff's CFEPA claim, and duly have held that no CFEPA claim may be heard by the District Court absent a release of jurisdiction by the [CHRO]." *McVay v. Stefanou*, No. 3:20-cv-00764 (CSH), 2021 WL 3260852, at *8 (D. Conn. July 30, 2021). As a result, "[t]he courts of this District have consistently applied the exhaustion provisions of the CFEPA to dismiss discrimination claims, finding a lack of subject matter jurisdiction where the plaintiff failed to obtain the requisite release prior to pursuing a private cause of action in court." *Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 272 (D. Conn. 2010) (collecting cases).

"[T]he court has jurisdiction to hear claims that are either: (1) included in a CHRO complaint, or (2) based on conduct subsequent to a CHRO complaint that can be deemed 'reasonably related' to the CHRO filing." *Gadbois v. Cumberland Farms, Inc.*, No. 3:21-CV-1509 (SVN), 2024 WL 4226908, at *11 (D. Conn. Sept. 18, 2024) (citation omitted).  "There are three types of claims that courts will find are 'reasonably related' to the one's asserted in an administrative filing: (1) claims where the conduct complained of would fall within the scope of the administrative investigation; (2) claims alleging retaliation by an employer against an employee for filing an administrative charge; and (3) claims where a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the administrative

charge." *Zawacki v. Realogy Corp.*, 628 F. Supp. 2d 274, 283 (D. Conn. 2009) (citing *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), *superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Svc. Care*, 163 F.3d 684, 693 (2d Cir. 1998)). The Second Circuit has remarked that "[t]he 'reasonably related' exception to the exhaustion requirement is essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the [administrative body] to the discrimination that a plaintiff claims" to have suffered. *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (internal quotation marks and citation omitted).

R&L argues that Mr. Cartagena-Cordero did not allege retaliation in his CHRO Complaint, and thus he failed to exhaust administrative remedies as to his retaliation claim. Mot. to Dismiss at 8–9.[7]

The Court disagrees.

"In order to establish a prima facie case of retaliation, [a plaintiff] must show (1) that she participated in an activity protected by Title VII [or the CFEPA], (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010); *see also id.* at 556 ("The analysis of discrimination and retaliation claims under CFEPA is the same as under Title VII.").

In his first CHRO complaint, Mr. Cartagena-Cordero alleged that he was harassed because of his race, reported that harassment to R&L, and after taking leave, R&L "terminated

---

[7] Mr. Cartagena-Cordero does not address these arguments in his Opposition.

[his] employment on 10/17/2022 without any explanation." First CHRO Complaint at 3. He further alleged that he "believe[s] [he] was . . . terminated because of [his] National Origin, Hispanic, and ancestry, [sic] Puerto Rican." *Id.* His amended CHRO complaint expressly adopted these factual allegations. Amended CHRO Complaint at 4 ("complainant adopts each and every allegation contained in the original complaint and the amended complaint unless specifically altered by expressed provisions to the contrary").

Although Mr. Cartagena-Cordero does not assert a retaliation claim in his CHRO complaint, he alleges that he engaged in a protected activity—reporting discriminatory conduct to R&L—and was later terminated by R&L. First CHRO Complaint at 3. Unlike in *Malliston*, where the plaintiff reported discriminatory conduct to someone other than the defendant, Mr. Cartagena-Cordero alleges that R&L knew of the alleged discriminatory incidents. *Compare id.* ("I told Respondent many times about these type of treatments"); *with Mallison v. Connecticut Off. of Early Childhood*, 657 F. Supp. 3d 221, 231 (D. Conn. 2023) ("the retaliation claim in Plaintiff's complaint is directed at Defendant Bye, and neither of the two paragraphs cited from Plaintiff's CHRO complaint affidavit have anything to do with Defendant Bye.").

Accordingly, while perhaps not model pleading, Mr. Cartagena-Cordero's CHRO complaint can fairly be said to give the CHRO "adequate notice" of a potential retaliation claim. *See Williams*, 458 F.3d at 70 ("The central question is whether the complaint filed with the [administrative agency] gave that agency adequate notice to investigate discrimination on both bases." (internal citation and quotation marks omitted)); *see also Lee v. Grocery Haulers Inc.*, No. 3:20CV523 (JBA), 2022 WL 743087, at *8 (D. Conn. Mar. 11, 2022), *aff'd*, No. 22-680, 2023 WL 8253089 (2d Cir. Nov. 29, 2023) ("While retaliation and discrimination claims are different theories of liability, the factual allegations in Plaintiff's CHRO claim arguably were

sufficient to put the administrative agency on notice of a retaliation claim that is reasonably related to Plaintiff's discrimination claim. He alleges that Mr. Bocca made a derogatory racial remark, he informed Mr. Hagan of the 'incident and actions of Mr. Bocca,' and he was discharged.").

Accordingly, Mr. Cartagena-Cordero has exhausted the available administrative remedies for his retaliation claim.

### 3. Failure to State a Claim

Under Connecticut General Statute § 46a-60(b)(1), it is unlawful for an employer "to discharge from employment any individual or to discriminate against any individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, . . . , national origin," or other protected class. Likewise, under Section 46a-60(b)(4) of the statute, it is unlawful for an employer "to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice." "The analysis of discrimination and retaliation claims under CFEPA is the same as under Title VII." *Kaytor*, 609 F.3d at 556; *see also Levy v. Comm'n on Human Rights & Opportunities*, 671 A.2d 349, 355 (Conn. 1996) ("Although this case is based solely on Connecticut law, we review federal precedent concerning employment discrimination for guidance in enforcing our own anti-discrimination statutes.").

Like other discriminatory treatment claims, CFEPA discrimination and retaliation claims are analyzed under the three-step burden-shifting analysis set forth in *McDonnell*, 411 U.S. 792 (1973) described above. *See DeMoss v. Norwalk Bd. of Ed.*, 21 F. Supp. 3d 154, 167 (D. Conn. 2014). As discussed above, the plaintiff bears a low burden at the pleading stage, and "is not required to plead a prima facie case under *McDonnell Douglas* . . . to defeat a motion to

dismiss." *Vega*, 801 F.3d at 84. The plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Id.* (quotation omitted).

"In order to establish a prima facie case [of employment discrimination], the complainant must prove that: (1) he is in the protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) that the adverse action occurred under circumstances giving rise to an inference of discrimination." *Bd. of Educ. of City of Norwalk v. Comm'n on Hum. Rts. & Opportunities*, 832 A.2d 660, 668–69 (Conn. 2003). Moreover, as discussed above, "to establish a prima facie case of retaliation, [a plaintiff] must show (1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Kaytor*, 609 F.3d at 552.

"To constitute wrongful retaliation, a termination must, *inter alia*, have a causal connection to a plaintiff's participation in a protected activity (i.e., the exercising of rights protected by the relevant statute, here the ADEA and CFEPA)." *Zawacki*, 628 F. Supp. 2d at 282. In contrast, "to constitute wrongful discrimination, a termination must, *inter alia*, be motivated, at least in part, by a plaintiff's membership in a protected class." *Id.* A court "cannot necessarily or automatically assume that because the Plaintiff alleges her termination was discriminatory, she also alleges her termination was retaliatory." *Id.*

R&L argues that "Plaintiff does not present any evidence suggesting his termination was motivated by unlawful discrimination, or that the decision to terminate him was made with knowledge of his alleged previous complaints about co-workers." Mot. to Dismiss at 10. R&L also argues that the Complaint "fails to identify whom at R&L decided to terminate his

employment" and that "Plaintiff does not allege any racial comments, or other evidence of discrimination or retaliation by decision makers, let alone occurring in proximity to his alleged termination." *Id.* at 11–12.

In response, Mr. Cartagena-Cordero alleges that he "has pled a prima facie case, especially in light of the relaxed pleading requirements in this Circuit" Opp'n at 6.

The Court agrees.

As to the discrimination claim, the parties agree that Mr. Cartagena-Cordero is in a protected class and was qualified for his position. Mr. Cartagena-Cordero also alleges that he suffered an adverse employment action—his termination. *See Feingold*, 366 F.3d at 152 ("Examples of materially adverse changes include termination of employment" (citation omitted)). Thus, the remaining issue is whether Mr. Cartagena-Cordero has met his "'minimal burden of alleging facts suggesting an inference of discriminatory motivation,' and [done] so by directly or indirectly pleading a plausible inference of discrimination." *Mauro v. New York City Dep't of Educ.*, No. 21-2671, 2022 WL 17844438, at *1 (2d Cir. Dec. 22, 2022) (summary order) (citing *Vega*, 801 F.3d at 85, 87).

Mr. Cartagena-Cordero alleges that his coworkers "would call him 'Mexican' and suggested 'he go back to where he came from,'" "used the 'N' word towards him," and that he "constantly had ethnic and racial epithets directed towards him" and "was told if he did not like it he could quit." Compl. ¶ 4, 7. R&L argues that Mr. Cartagena-Cordero fails to show a relationship between these statements and an adverse employment action. Mot. to Dismiss at 10–11 (citing *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 410–11 (S.D.N.Y. 2014).

But "there is no unbending or rigid rule about what circumstances allow an inference of discrimination when there is an adverse employment decision," *Chertkova v. Connecticut Gen.*

*Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996). And, "[a]llegations of discriminatory comments directed at the plaintiff's racial group are a recognized method of establishing discriminatory intent." *Henry*, 18 F. Supp. 3d at 408 (citing *Chertkova*, 92 F.3d at 91 (collecting cases)). While Mr. Cartagena-Cordero does not allege who made these statements and provide a nexus with his termination, the Court need not decide if his allegations actually create a genuine issue of material fact at this time. *See Mauro*, 2022 WL 17844438, at *1 ("We have often vacated improper dismissals in discrimination cases where courts apply overly stringent pleading standards, cautioning against imposing too high a burden on plaintiffs alleging discrimination at the 12(b)(6) stage." (citing *Doe v. Columbia Univ.*, 831 F.3d 46, 55 n.8 (2d Cir. 2016))); *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) (noting "the care exercised in this Circuit to avoid hastily dismissing complaints of civil rights violations").

As to the retaliation claim, prongs one, two and, three are met, as Mr. Cartagena-Cordero alleges that he reported incidents of harassment to R&L, which is a protected activity under the CFEPA, and was later terminated. *See* Compl. ¶ 5, 10. R&L, citing *John v. Walmart Store No. 2585*, argues that "Plaintiff does not present any evidence suggesting . . . that the decision to terminate him was made with knowledge of his alleged previous complaints about co-workers." Mot. to Dismiss at 10 (citing *John v. Walmart Store No. 2585*, No. 3:21-cv-1285 (MPS), 2023 WL 2346577, at *9 (D. Conn. Mar. 3, 2023)). Contrary to Defendant's assertions otherwise, however, Mr. Cartagena-Cordero alleges that he "repeatedly informed R&L Carrier's that he was being harassed and the nature of the harassment." Compl. ¶ 5. Thus, unlike in *John v. Walmart Store No. 2585*, where the plaintiff not only failed to establish an adverse employment action but also did not "plead[] any facts suggesting that one of the allegedly retaliatory actions followed

some protected activity by [Plaintiff] in reasonable temporal proximity," Mr. Cartagena-Cordero alleges that he engaged in a protected activity at some time before his termination.

Though the length of time between the latest possible date of allegedly retaliatory conduct, June 6, 2022, and his termination in October 17, 2022 may be too remote to survive summary judgment, *see Hasemann v. United Parcel Serv. of Am., Inc.*, No. 3:11-CV-554 (VLB), 2013 WL 696424, at *6 (D. Conn. Feb. 26, 2013) (on summary judgment comments made "in the months leading up to [Plaintiff's] termination" are too remote), at the pleading stage, the approximately four-month period from June to October 2022 is sufficient to plausibly allege a causal connection between the protected activity and Plaintiff's termination. *See Johnson*, 2018 WL 306697, at *7 ("He lodged a complaint with HR in September 2013, which was followed by the unauthorized absence citation and wage garnishment in February 2014. Accordingly, I conclude plaintiff has pleaded a sufficient retaliation claim against the Department." (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (five month temporal nexus sufficient))).

Likewise, while the racially discriminatory comments allegedly made towards Mr. Cartagena-Cordero may not be sufficient to survive summary judgment, *see* Mot. to Dismiss at 11 (citing *Cardona v. Willimantic Hous. Auth.*, No. 3:19-CV-00235 (MPS), 2021 WL 849020, at *12 (D. Conn. Mar. 5, 2021) ("stray remarks not made by decision-maker" insufficient on summary judgment); *and McAllister v. Price Rite*, No. 3:09-CV-01888 (VLB), 2013 WL 5187036, at *8 (D. Conn. Sept. 13, 2013) (same)), Mr. Cartagena-Cordero has alleged facts that give "plausible support to a minimal inference of discriminatory motivation," to defeat a motion to dismiss. *Littlejohn*, 795 F.3d at 311 (2d Cir. 2015)); *Buon v. Spindler*, 65 F.4th 64, 85 (2d Cir. 2023) ("As we emphasized in *Vega*, at the motion to dismiss stage, 'the question is not whether a

plaintiff is likely to prevail, but whether the well-pleaded factual allegations plausibly give rise to an inference of unlawful discrimination, i.e., whether plaintiffs allege enough to nudge[ ] their claims across the line from conceivable to plausible.'" (quoting *Vega*, 801 F.3d at 87) (internal quotation marks omitted) (alternation in original)).

Accordingly, given the "exceedingly low burden" required of plaintiffs at the pleading stage, *see Dawson*, 624 F. App'x at 770, Mr. Cartagena-Cordero's allegations are sufficient to plead retaliation and discrimination claims.

### D.  The Hostile Work Environment Claim

Defendants argue that Count Four "does not cite a statute or other legal authority upon which it is premised" and "is also indistinct from the Title VII hostile work environment claim advanced in the Second Count." Mot. to Dismiss at 19.

Mr. Cartagena-Cordero argues that his factual allegations are sufficient to meet the standard for a hostile work environment, and cites to the elements of a hostile work environment claim under federal statutes. Opp'n at 8–9 (citing *Castro v. Yale Univ.*, 518 F. Supp. 3d 593, 608–9 (D. Conn. 2021) and *Skelcher v. Connecticut*, No. 3:21-CV-00018 (VLB), 2021 WL 5281537, at *24 (D. Conn. Nov. 12, 2021)).

In reply, R&L argues that "[i]t is well-established that employment discrimination claims which are adequately enforceable through statutory remedies are precluded by Title VII and CFEPA," and thus Plaintiff may not bring a stand-alone common law hostile work environment claim. Reply at 8 (citing *Friel v. St. Francis Hospital*, No. 3:97-cv-803 (DJS), 1997 WL 694729, at *3 (D. Conn. Oct. 31, 1997)).

The Court agrees.

Mr. Cartagena-Cordero has not cited to any Connecticut law recognizing a common law hostile work environment claim separate from Title VII or the CFEPA. *See Castro*, 518 F. Supp. 3d at 608–9 (discussing hostile work environment under Title VII and Title IX); *Skelcher*, 2021 WL 5281537 at *24 (discussing Title VII hostile work environment claim).

This is unsurprising, as this Court and other courts in this Circuit have recognized that state or federal statutes employment statutes preclude common law claims seeking remedies already provided by statute. *Carter v. MetLife Grp., Inc.*, No. 3:23-CV-00684 (SVN), 2023 WL 8476211, at *6 (D. Conn. Dec. 7, 2023) ("The Connecticut Supreme Court has clearly held that common law claims for wrongful termination in violation of public policy are precluded when (1) the elements of a statutory violation (the public policy) have not been satisfied; or (2) the relevant statute provides a remedy." (citing *Burnham v. Karl & Gelb, P.C.*, 745 A.2d 178, 181 (Conn. 2000)); *Leichter v. Lebanon Bd. of Educ.*, 917 F. Supp. 2d 177, 194–95 (D. Conn. 2013) (While recognizing a split in Connecticut courts about whether CFEPA provides an exclusive remedy, noting that "Connecticut courts have . . . preclude[d] claims for breach of the covenant of good faith and fair dealing where there are adequate statutory remedies through which the alleged public policy violations can be enforced," and applying "the rationale of these cases . . . to [Plaintiff's] claim [because] his claim is likewise predicated on the violation of public policy embodied by a statute upon which he asserts a claim and which statute he fails to establish provides an inadequate remedy."); *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 138 (2d Cir. 2001) ("[The Second Circuit] held in *Torres v. Pisano*, 116 F.3d 625 (2d Cir. 1997), that the New York Workers' Compensation Law barred a common law negligence claim that was asserted on the basis of an alleged hostile work environment because of co-worker harassment. Ferris's state common law negligence claims are therefore precluded by the exclusive remedy

provisions of New York's Workers' Compensation statute." (internal citation omitted)); *Honeck v. Nicolock Paving Stones of New England, LLC.*, 2005 WL 1388736 at *2 (D. Conn. 2005) ("So long as the plaintiff has a remedy available under either state or federal law which serves to protect the public policy alleged to have been violated, the common-law cause of action for wrongful discharge is precluded.").

Accordingly, because Plaintiff's common law hostile work environment claim would be identical to his Title VII claim, and he fails to explain why Title VII fails to provide an adequate remedy, Defendant's motion to dismiss Plaintiff's common law hostile work environment claim will be granted. *See Leichter*, 917 F. Supp. 2d at 195 (finding Connecticut courts have precluded common law claims "where there are adequate statutory remedies through which the alleged public policy violations can be enforced.").

### E.  Leave to Amend

Under Federal Rule of Civil Procedure 15(a),

> [a] party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* The district court has broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting that leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)."). "[A] motion for leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Phillip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)); *see also Kim v. Kimm*, 884 F.3d 98, 105–06 ("Therefore, because the proposed amendments would have no impact on the basis for the district court's dismissal and would consequently be futile, the district court did not abuse its discretion in denying [the plaintiff] leave to amend." (citing *Ellis*, 336 F.3d at 127)).

Here, as discussed above, Mr. Cartagena-Cordero's Section 46a–58 claim and common law hostile work environment claim must be dismissed. Because Section 46a–58 does not establish a private cause of action, *see Garcia*, 46 F. Supp. 2d at 142 ("Section 43a–58 claims can only be prosecuted through the CHRO's administrative procedures."), and any common law hostile work environment claim would be superseded by Plaintiff's Title VII claim, *see Leichter*, 917 F. Supp. 2d at 195 (dismissing state law claim where it is "predicated on the violation of public policy embodied by a statute upon which [Plaintiff] asserts a claim and which statute he fails to establish provides an inadequate remedy."), amendment of Mr. Cartagena-Cordero's Section 46a–58 and common law hostile work environment claims would be futile.

To the extent, however, his FMLA interference claim can be repleaded, notwithstanding the allegations in his current Complaint, such leave will be granted. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

Accordingly, no leave to amend will be permitted on Mr. Cartagena-Cordero's Section 46a–58 and common law hostile work environment claims, *Ellis*, 336 F.3d at 127 (2d Cir. 2003) ("[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile"), but leave to amend will be granted as to his FMLA interference, to the extent that the appropriate factual allegations can be faithfully made.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is **GRANTED** as to Plaintiff's Section 46a–58 and common law hostile work environment claims, and any FMLA interference claim, to the extent that one is asserted, but **DENIED** as to Plaintiff's remaining claims for retaliation and discrimination under the CFEPA, and his Title VII hostile work environment and FMLA retaliation claims.

The Section 46a–58, and common law hostile work environment claims are dismissed with prejudice.

**SO ORDERED** at New Haven, Connecticut, this 15th day of November, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE